981 So.2d 133 (2008)
STATE of Louisiana, Appellee,
v.
Frederick GREER, Appellant.
No. 43,177-KA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2008.
*134 Louisiana Appellate Project by Edward Kelly Bauman, John Nathaniel Bokenfohr, for Appellant.
Paul Joseph Carmouche, District Attorney, John Ford McWilliams, Jr., Damon Daniel Kervin, Assistant District Attorneys, for Appellee.
Before PEATROSS, DREW and MOORE, JJ.
DREW, J.
Frederick Greer was convicted of two counts of aggravated robbery.[1] Adjudicated as a third felony offender on each count, he received two concurrent life sentences at hard labor without benefit of parole, probation or suspension of sentence. Through counsel, the defendant appeals only one issueallegedly improper usage of other crimes evidence at trial.
Defendant was granted permission to file a pro se brief, in which he provides more argument about other crimes evidence and additionally claims ineffective assistance of counsel and prosecutorial misconduct, each allegation related to the other crimes evidence. We affirm.

FACTS
On February 4, 2004, Billy and Shirley Giles, an elderly couple, returned to their Keithville home after eating dinner at a Shreveport restaurant. Mrs. Giles, who was driving,[2] pulled into their carport. The couple exited the vehicle. Almost immediately *135 they noticed another car pull into the driveway, heard a "friendly" honk, and saw two black males, one much bigger than the other, get out of the car and approach. Mrs. Giles also saw a white female seated in the car.
The men physically attacked both victims without warning. The larger assailant hit Mrs. Giles in the face, knocked her down, sat on her stomach, and ordered her to remove her rings. When she had trouble taking one off, the assailant threatened to cut off her finger, then forcibly removed the ring, crushing the bones in her finger. He searched her pockets and purse, demanding money and car keys.
The smaller thug knocked Mr. Giles to the ground and went through his wallet and pockets. Mr. Giles heard his wife screaming throughout the ordeal. The couple heard the bigger man repeatedly using the word "bitch."
When the home alarm sounded as they tried to enter, the intruders got away with rings, debit and credit cards, and Wal-Mart gift cards.
The victims had extensive bruising over their faces. Mrs. Giles' finger was fractured, requiring emergency surgery.
A similar robbery involving elderly victims (Ms. DeFatta and Ms. Levy[3]) occurred on January 8, 2004, less than a month before the instant case. One of those victims positively identified him as her attacker in a photo lineup. The defendant was then charged with both sets of crimes.
In discovery, the state gave notice of its intention to use other crimes evidence of the DeFatta/Levy robbery, pursuant to La. C.E. art. 404(B).[4]
On April 3, 2007, a pretrial hearing[5] was held wherein testimony was introduced and arguments heard concerning this 404(B) evidence. The trial court found that the state had met its burden that the prior crime was committed by the defendant and determined that the evidence was admissible at trial.
The four-day jury trial began 20 days later. There the state presented testimony of Amanda Canter and Darius Shivers, *136 who participated with the defendant in the robbery of Mr. and Mrs. Giles. Each of them identified the defendant as the person who committed these brutal crimes.
Although neither Mr. or Mrs. Giles was able to identify their assailants,[6] Canter and Shivers confirmed that Greer attacked Mrs. Giles and that Shivers (the smaller of the two men) attacked Mr. Giles. Canter saw everything from the back seat of her car.
The state presented:
 other witnesses who corroborated the testimony of Canter and Shivers;
 a security camera video showing the defendant and Shivers purchasing various items from a local Wal-Mart using Mrs. Giles' stolen gift cards only hours after the robbery; and
 testimony from three witnesses concerning the prior DeFatta/Levy robbery, including Ms. Levy's positive identification of the defendant as her assailant.
The defendant testified, denying any involvement in the robberies. The jury obviously disbelieved his story.
After the jury found the defendant guilty as charged, the state filed a third felony habitual offender bill. The trial court ultimately adjudicated the defendant as such and sentenced him as related hereinbefore.
Through counsel, defendant argues that:
 the state had no proper purpose to introduce evidence related to the January 2004 robbery of Betty DeFatta and Tona Levy;
 the state failed to prove by clear and convincing evidence that the robbery of Ms. DeFatta and Ms. Levy was committed by defendant;
 the prejudicial nature of admitting the evidence heavily outweighed the probative value of the evidence.
The state responds that:
 the evidence of other crimes had independent relevance other than to show defendant's bad character;
 the evidence was submitted to prove motive, plan and identity; and
 this evidence proves these similar acts were committed by the defendant and not someone else.
Our law on other crimes evidence is well settled.[7]
*137 Here, the state properly filed notice of its intention to use other crimes evidence pursuant to La. C.E. art. 404(B). A pretrial hearing was held, resulting in the trial court finding the evidence admissible. At trial, the details of the prior DeFatta/Levy crime were presented through the testimony of three witnesses: Ms. DeFatta, Ms. Levy, and Sergeant Jody Jones, the Shreveport Police Department investigator who had handled the DeFatta/Levy robbery.
The DeFatta/Levy robbery bore similarities to the Giles robbery:
 two elderly people parked their vehicle in a Shreveport carport;[8]
 another car pulled in behind them;
 a tall black male opened the car door, pulling a knife and demanding jewelry;
 the robber was angry and frequently used the word "bitch";
 when Ms. DeFatta had trouble removing a ring from her finger, the robber made a threatening move toward her with the knife;
 the robber demanded their purses and keys, then fled in his car; and
 DeFatta and Levy both observed a female, although of a different race, in the robber's car.
Ms. Levy positively identified the defendant as her attacker:
 in a photographic lineup;
 at the Prieur hearing; and
 at trial.
Evidence from the DeFatta/Levy crime was of great probative value in demonstrating Greer's complicity in both sets of robberies, refuting Greer's defense of misidentification.
Other crimes evidence is admissible for the purpose of proving a material fact at issue. We cannot conclude that the trial court abused its discretion in admitting this other crimes evidence. All of it was highly probative to show motive, opportunity, intent, preparation, plan, system, knowledge, identity, and modus operandi, pursuant to La. C.E. art. 404(B).
The direct evidence of defendant's guilt was abundant and obvious.

PRO SE ASSIGNMENTS
Defendant claims two additional assignments of error: ineffective assistance of counsel, and prosecutorial misconduct. He provides little or no factual support for his claims. Both of these assignments are actually permutations of his objections to the utilization of other crimes evidence.[9]
*138 Our law on ineffective assistance of counsel is well settled.[10]
We have scoured this record for support for either of these new allegations and have found none. If he has evidence to back up these claims, an application for post-conviction relief may afford him the opportunity to present them. As it is, this record demonstrates that both prosecution and defense counsel exhibited professional and competent trial skills. Defendant received a fair trial. Even without reference to any other crimes, the evidence against defendant was absolutely overwhelming, including his being identified by his two co-participants as the large man who cruelly terrorized and robbed Mr. and Mrs. Giles.

ERROR PATENT
A review of the record reveals one error patent.
The trial court did not advise the defendant of the time period within which to *139 apply for post-conviction relief.[11] Our supreme court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for postconviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant.[12]
The trial court shall advise the defendant by this opinion, that no application for post-conviction relief, including applications seeking out-of-time appeals, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

DECREE
The defendant's convictions and sentences are AFFIRMED.
NOTES
[1] This crime is now "Second Degree Robbery." La. R.S. 14:64.4.
[2] Mr. Giles is legally blind.
[3] The name is sometimes spelled "Levey" in the record.
[4] C.E. Art. 404(B) Other crimes, wrongs, or acts.

(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible; provided that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence; and further provided that an expert's opinion as to the effects of the prior assaultive acts on the accused's state of mind is admissible.
[5] The hearing was held in strict compliance with State v. Prieur, 277 So.2d 126, 128 (La. 1973).
[6] The only identification they could provide was that the assailants were black males, one of whom was taller than the other. Defendant has tattoos and gold teeth. Neither Mr. nor Mrs. Giles recollected observing these characteristics.
[7] Generally, evidence of other acts of misconduct is inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. Prieur, supra, at footnote 5.

Evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789.
Upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B). Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Jacobs, XXXX-XXXX (La.5/15/01), 803 So.2d 933, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002).
A trial judge is vested with wide discretion in determining relevance of evidence; his ruling on the admissibility of other crimes evidence will not be overturned absent a clear showing of abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36,613 (La.App.2d Cir. 12/4/02), 833 So.2d 1034. For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by the defendant, (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(1) [motive, intent, knowledge, identity, absence of mistake or accident], and (3) show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, supra.
The erroneous introduction of other crimes evidence is subject to harmless error review. State v. Roberson, supra; State v. Gatti, 39,833 (La.App.2d Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511.
[8] Geographically, Keithville is only a few miles from Shreveport.
[9] He makes numerous factual misstatements. Most egregiously, he alleges pro se that one of the victims of the prior robbery could not identify him as the person who robbed her. In fact, she identified him three different times, twice under oath.
[10] As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139. A motion for new trial is also an accepted vehicle by which to raise such a claim. Id. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673.

The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir. 1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991). Also State v. Tilmon, 38,003 (La. App.2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La. 11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La. App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
[11] The minutes dated June 13, 2007, indicate that "defendant was informed of his right to post-conviction relief proceedings," but the transcript does not reflect any such discussion. The transcript controls over the minutes where there is a conflict. State v. Lynch, 441 So.2d 732 (La. 1983).
[12] State ex rel. Glover v. State, 93-2330 (La.9/5/95), 660 So.2d 1189; State v. Hunter, 36,692 (La.App.2d Cir. 12/20/02), 834 So.2d 6.