DREW, J.
|, Matthew Breedlove was arrested in Barnes & Noble Booksellers on two counts of video voyeurism, contrary to La. R.S. 14:283 A(l). A jury found him guilty by vote of 11-1 on each count. He was sentenced to three years at hard labor, without benefits, and a fine of $1,000 on Count 1, concurrently with two years at hard labor on Count 2. He now appeals, urging insufficient evidence to convict, improper denial of his motion to suppress evidence of prior bad acts, and excessive sentence. For the reasons expressed, we affirm in part, reverse and vacate in part, and remand for resentencing.
L FACTS
1. Robert Bolden testified:
• in the spring of 2012, he was working as a loss prevention officer at Old *1199 Navy in Shreveport, next door to Barnes & Noble (“B & N”);
• a few weeks before the B & N incident, he saw a man loitering in the boys’ section of the store;
• the man had a briefcase, possibly with a lens inside;
• the man approached some young women in school uniforms;
• the man repeatedly waved his briefcase under then.- skirts;
• as he (Bolden) approached the females, the man left the store;
• he guessed that the girls at Old Navy were between 13 and 16;
• he was unable to confirm the exact nature of the “lens” he saw;
• he then notified management and filed a report;
• his much later review of the Old Navy surveillance video produced nothing of probative value for trial;
• he did not tell the prosecutors about his Old Navy report until just before the instant trial;
on March 19, 2012, he still worked at Old Navy;
• while on break, he entered B & N and saw the same man, later identified as the defendant, loitering near some other school-aged girls;
• the defendant was bent down between T.Y. and K.W. as if to look at books on a lower shelf, but with his phone hand at a level lower than the . length of the girls’ skirts;
• after walking away, the defendant returned a few minutes later, at which point he paced back and forth between T.Y. and K.W. while holding his phone “almost behind him and to the side”;
• after alerting the store manager, he called the police;
• while waiting for the police, the subject approached a woman in running shorts, pointing his cell phone in her direction;
• whether the cell phone was recording he didn’t know;
• at trial, he identified John Matthew Breedlove as the man he observed at Old Navy; and
• he didn’t tell the police about the previous Old Navy incident until right before the instant trial.
2. Officer Matthew Holloway testified:
• on March 19, 2012, he was working for the Shreveport Police Department Officer, when he responded to the call in question;
• at the scene, he first spoke with Bol-den, who described what he had seen, pointing out the two girls in question;
• he and Bolden then saw the defendant squat on the opposite side of an aisle of books where a young woman in running shorts was seated, reading a book;
• the defendant was pointing a cell phone at the woman;
• he arrested the defendant, seizing the cell phone which the defendant was trying to conceal in his pocket;
• he seized the phone, turned off the power, and placed the defendant in his squad car;
h* upon reentering B & N, he could not find the unnamed woman in the running shorts.
• the defendant had his cell phone in his right hand, with the screen facing his palm;
• he approached and custodially detained the man;
• the defendant’s phone was an iPhone 3, with no reverse camera; .
*1200 • he questioned the girls (T.Y. was 16, and K.W. was 17, on that date); and
• they remembered seeing the defendant, but he never made contact with them, and they never saw him using his phone.
3. Det. Jeff Allday testified that:
• he executed a search warrant for the defendant’s phone, which revealed no photographs or videos of K.W. or T.Y., though it did yield information central to this investigation;
• he ran a Cellbrite program to extract data from the phone, flagging material that he thought was pertinent to these criminal charges;
• he then described four videos and one photograph, which were admitted into evidence and displayed to the jury;[1]
• he explained that the program could not recover anything that had been deleted; and
• from the images captured on the date of this incident, he found no photos or videos of any particular person.
Lin addition, each victim identified Breedlove as the man who inappropriately lingered behind them at the bookstore. K.W. further described him as standing behind them for 15-30 seconds,[2] and then “scurrying away” when she turned to look at him.
II. ISSUES ON APPEAL
The defendant argues:
• the evidence is insufficient to prove a violation of La. R.S. 14:283, in regard to T.Y. (Count One) and K.W (Count Two);
• the “other crimes” evidence was improperly admitted; and
• the sentence imposed is excessive.
III. ANALYSIS OF ISSUES ON APPEAL
A. Sufficiency
(1) Our legal analysis of general insufficiency claims is well settled.[3]
h(2) Analysis of La. R.S. 14:283(A)(1), Video Voyeurism
Video voyeurism is defined as
“The use of any camera, videotape, photo-optical, photo-electric, unmanned air *1201 craft system, or any other image recording device for the purpose of observing, viewing, photographing, filming, or videotaping a person where that person has not consented to the observing, viewing, photographing, filming, or videotaping and it is for a lewd or lascivious purpose.”
In order to prove that a defendant committed video voyeurism, the state is required to establish beyond a reasonable doubt that (1) defendant used an image-recording device for the purpose of observing, viewing, photographing, filming, or videotaping another person; (2) that the person did not consent to being observed, photographed, or videotaped; and (3) that the defendant committed the act for a lewd or lascivious purpose. State v. Schaller, 08-522 (La. App. 5th Cir. 5/26/09), 15 So.3d 1046, 1054, writ denied, 09-1406 (La. 2/26/10), 28 So.3d 268. Additionally, in order to show that the sentencing enhancement provisions pertaining to juvenile | ¿victims under La. R.S. 14:283(B)(4) apply to a defendant, the state is required to prove all of the elements listed above, plus: (1) that the child being observed, photographed, or videotaped was under the age *1202 of 17 years; and, (2) that the defendant intended to arouse or gratify his own sexual desires. Id.
In State v. Saibold, 213 La. 415, 34 So.2d 909 (1948), the Louisiana supreme court stated that lewd or lascivious behavior “connotes actions or gestures of the lustful and lecherous nature.” Id. at 911.
The word “lewd” means lustful or indecent and signifies that form of immorality which relates to sexual impurity carried on in a wanton manner. Further, the word “lewd” is identified with obscenity and community norms for morality. The word “lascivious” means tending to incite lust, indecent, obscene and tending to deprave the morals in respect to sexual relations. Finding that an act is lewd or lascivious depends upon the time, the place and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. State v. Bugbee, 34,524 (La.App. 2d Cir. 2/28/01), 781 So.2d 748; State v. Sturdivant, 27,680 (La.App. 2d Cir. 2/28/96), 669 So.2d 654).
In State v. Wright, 40,945 (La. App. 2d Cir. 5/19/06), 931 So.2d 432, writ denied, 06-1727 (La. 3/16/07), 952 So.2d 694, this Court discussed the scope and meaning of “lewd and lascivious” in the context of La. R.S. 14:283, holding that Louisiana criminal statutes must be “given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.” La. R.S. 14:3. Although there is no reported constitutional challenge to Louisiana’s video voyeurism law, there is sufficient ^jurisprudence holding that the terms “lewd and lascivious” need not be defined by the statute for that statute to survive a constitutional challenge for vagueness. See State v. Interiano, 2003-1760 (La. 2/13/04), 868 So.2d 9. A plain reading of the activity proscribed by the video voyeurism statute is sufficiently narrow and gives adequate notice to those who would engage in such activities that the conduct is proscribed. Furthermore, the statute is not overbroad because the challenged statute affects conduct rather than speech. Also, it is clear that the legislature intended to make criminal all acts of a certain kind. State v. Wright, supra at 442-43. See also State v. Schaller, supra at 1055 (applying jurisprudential definition of lewd and lascivious to the video voyeurism statute).
It is within the province of the trier of fact to determine whether a defendant has the requisite intent to arouse or gratify his sexual desires. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La. 1982).
“Use of ... for the purpose of ... ”
As a threshold matter, it is necessary to address whether a defendant can be convicted of video voyeurism in the absence of a photo, video or | ¿recording, i.e., the physical, tangible fruit of the crime? We answer in the affirmative, following the standard rules of statutory construction.[4]
*1203 La. R.S. 14:283 is a relatively new criminal statute. Louisiana jurisprudence yields only five cases addressing this crime. Each of these five cases included a videotape of the victim and the victim’s identification of herself as the person on the recording.[5] Nevertheless, the plain language of the statute contemplates the use of a recording device that failed to take a picture, video, or otherwise capture an image as a crime, particularly in light of the “purpose of’ clause. Also, the statute does not include a physicality requirement, as other states have adopted, which requires that an image be somehow captured.[6]
While difficult to prove without evidence of captured images, the statute itself contemplates such a conviction, so long as other evidence exists in support that the crime was committed. Here, the evidence adduced was | sufficient to prove that the defendant used his cell phone for the purpose of observing, viewing, photographing, filming or videotaping T.Y. and K.W.
“... for a lewd or lascivious purpose ... with the intention of arousing or gratifying the sexual desires of the defendant. ..”
The second question is whether the defendant acted with- the intention of arousing or gratifying his sexual desires with regard to T.Y. Louisiana jurisprudence applies nearly identical tests for determining whether a defendant acted with a lewd or lascivious purpose, as to whether a defendant intended to arouse or gratify his sexual desires. The following analysis applies to each element.
State v. Schaller, supra, held that the installation of a hidden camera in a guest bedroom where a defendant knows sexual conduct will likely occur, accompanied by the defendant’s encouragement of the sexual conduct, is sufficient to show that a defendant acted with a lewd and lascivious purpose. However, Breedlove correctly points out that Louisiana courts have not addressed whether using a device for the purpose of observing, viewing, photographing, filming, or videotaping the undergarments of a perspn without that person’s consent is lewd and lascivious. See State v. Wright, supra (hidden camera in dressing room and recordings of girls changing clothes); State v. Boudreaux, supra (hidden camera in bedroom and recordings of victim in vaiying states of undress); and State v. Perry, supra (same).
*1204 Breedlove urges this Court to consider his actions in light of those cases where our courts have found that there was not sufficient evidence to prove a lewd or lascivious purpose.
• State v. Rideaux, 05-446 (La.App. 3d Cir. 11/2/05), 916 So.2d 488 (defendant’s acts of rubbing a minor victim’s feet when she was asleep and then proceeding to unhook her bra and rub her back and near her armpits and buttocks was not sufficient to prove that defendant had a lewd or lascivious purpose or that he acted with the intent to arouse or gratify sexual desires);
• State v. Peloquin, 04-667 (La.App. 3d Cir. 11/17/04), 888 So.2d 393, writ denied, 04-3170 (La. 4/8/05), 898 So.2d 1280 (defendant’s question to minor victim of whether she wanted to see defendant’s penis was not sufficient to prove that the defendant had a lewd or lascivious purpose when on review in the context of the admissibility of “other acts” evidence); and
• State v. Louviere, 602 So.2d 1042 (La. App. 4th Cir. 1992), writ denied, 610 So.2d 796 (La. 1993) (defendant’s act of asking two juveniles to kiss him to see if his breath smelled, and then attempting to put his tongue in their mouths was not sufficient to prove that defendant acted with the intent to arouse or gratify sexual desires).
Breedlove’s argument is not persuasive in light of the evidence adduced at trial. In addition to hearing the testimonies of the three officers, plus T.Y. and K.W., the jury also viewed four videos and one photograph, which established the clear inference that this defendant’s positioning of his phone and subsequent movements were for the purpose of observing, viewing, photographing, filming, or videotaping underneath K.W.’s and T.Y’s skirts. This shows defendant’s perverted sexual proclivities regarding young women. See State v. Schaller, supra.
Breedlove also suggests that the circumstances surrounding his actions could not possibly lead to an inference of lewd or lascivious purpose. This is also unpersuasive. Mid-length skirts and shorts are common women’s attire. The use of a camera for the purpose of observing, viewing, photographing, filming, or videotaping the area under a woman’s skirt or [^shorts circumstantially supports a finding of lewd conduct.[7] That there was no contact between the defendant and the victims is irrelevant.
Breedlove emphasizes the minor inconsistencies in Officer Bolden’s statements at the pretrial hearings and at trial. He also claims that Officer Bolden’s testimony about the defendant’s movements around K.W. and T.Y is incompatible with their testimonies.
A review of the trial transcript reveals that Officer Bolden testified that the defendant approached K.W. and T.Y. twice, but T.Y. and K.W. said that they saw him only once. This is essentially an end-run attack on the officer’s credibility. The jury reasonably chose to believe the testimony of Officer Bolden, as well as the testimonies of K.W. and T.Y., reasonably conclud *1205 ing that the defendant approached the girls twice, though K.W. and T.Y. noticed him only once. The jury was well within its discretion to find this man acted with a lewd or lascivious purpose relative to these girls, and with the intent to arouse or gratify his sexual desires, as to T.Y.
B. “Prior acts” evidence
(1) La. C. E. 404(B)/412.2 Notice, Pri-eur Hearings and Motion to Suppress
The state filed a La. C. E. art. 404(B)/ 412.2 notice of intent to use evidence found on defendant’s cell phone, i.e., a video of an “unknown female victim” dated March 5, 2012, depicting “defendant adjusting a 112recording device in a bag, peering over that device and then standing beside the victim and positioning the bag underneath the victim’s skirt.”
The Prieur hearing began on April 8, 2013, but was continued after brief testimony from Officer Holloway. On April 10, 2013, the defendant filed a motion to suppress the evidence found on his cell phone.[8] On October 23, 2013, the trial court held a consolidated hearing on the motion to suppress and the Prieur hearing.
The trial court ruled that evidence sought to be introduced by the state was admissible and denied the motion to suppress. The state filed an amended La. C. E. art. 404(B)/412.2 notice, listing all of the evidence discussed at the prior hearing: four videos and a photo from the defendant’s phone and the testimony related to Bolden’s observations of the defendant at the Old Navy five to six weeks prior to March 19, 2012.
On August 20, 2016, just before opening statements, defense counsel took issue with the potential testimonies of Officers Holloway and Bolden regarding their observations of the defendant’s conduct near the unnamed girl in the running shorts immediately prior to his arrest. The defendant then made an oral motion to exclude any testimony as to those observations, claiming lack of notice. The trial court held a res gestae hearing to address these complaints.
At the hearing, Holloway and Bolden again testified as to their conversations and observations, as well as Holloway’s approach and arrest of the defendant. The trial court denied the motion to exclude.
11sBreedlove now argues that the court erred in denying his motion to suppress prior acts evidence. First, he asserts that the observation of the unnamed girl in running shorts cannot be admissible under the res gestae exception to La. C.E. 404(B). He argues that the videos, photograph and Officer Bolden’s statement about his observations at Old Navy are inadmissible under La. C.E. art. 412.2 because there was nothing to suggest that the persons depicted or described were minors and there was nothing of a sexual nature.
The state replies that the defendant’s argument directed at res gestae is “misguided and fails to inform this court of the trial court’s consideration of all factors in ruling the evidence as admissible.” According to the state, the photograph, videos, and Officer Bolden’s statement about his observations at Old Navy corroborate other evidence and show proof of pattern or activity, intent, and absence of mistake.
*1206 (2) La. C.E. art. 404(B)/412.2 Notices and Hearings
At the Prieur hearing on April 8, 2013, Officer Holloway described his observations of the defendant and the unnamed female in running shorts.
The matter was continued until October 23, 2013, at which Det. Allday testified:
• he was the officer who searched the defendant’s cell phone;
• he found no videos or photographs from March 19, 2012; and
• he flagged four videos as possible evidence of video voyeurism.
Officer Bolden testified:
• he had observed the defendant acting in a similarly suspicious manner at Old Navy five or six weeks prior to the B & N incident;
|i4* he observed the defendant on March 19, 2012, at B & N, describing the defendant’s actions pertaining to T.Y., K.W. and the unnamed woman in the running shorts; and
• he related his conversation with Officer Holloway, and described their joint observations of defendant’s conduct on the date of his arrest.
On January 29, 2014, the trial court held that the photo and videos recovered from defendant’s cell phone, as well as Officer Bolden’s observations of him in Old Navy were admissible, stating:
[T]his Court finds that the evidence sought to be admitted at the trial as to 412.2 and 404(B) evidence is admissible at the trial. However, the court will consider a request for jury instructions regarding 412.2 and 404(B) evidence for trial purposes.
íjí ⅜
The Court further finds that, the evidence, the probative value outweighs any prejudicial effect in accordance with the Code of Evidence Article 402, Article 402 and 403. The Court notes your objection to the Court’s ruling.
(3) Res Gestae Hearing
Immediately prior to trial, defendant took issue with the potential introduction of Officer Bolden’s and Officer Holloway’s testimonies about the unnamed girl in the running shorts. He argued that such statements were not included in the state’s La. C.E. art. 404(B)/412.2 notice, and were otherwise not properly admissible under res gestae.
In response, the state argued that defendant had adequate notice that one or both officers planned to testify about the girl in the running shorts. The state pointed to Officer Holloway’s report that had been provided in the state’s initial discovery response, which noted the observation of the “girl in the shorts” when he arrived at B & N. The state also argued that the statements should not be excluded because the witnesses’ observation were indeed res gestae as “an integral part of the narrative of the defendant’s arrest.”
|1BThe court ruled the evidence was admissible as res gestae, but permitted Breedlove to provoke a hearing on its admissibility.
After hearing counsels’ arguments and the testimonies of Officers Holloway and Bolden, the trial court denied the motion to exclude, holding the officers’ testimonies with regard to the unidentified girl in the running shorts were admissible as res ges-tae evidence:
The Court denies any motion to exclude the evidence and the Court will allow the State to present the evidence as res gestae and any other crimes evidence and it’s admissible at the trial. The Court—I remember, at the time of the previous hearings, the Court will consider the jury instruction limiting or dis *1207 cussing the parameters of any 412.2 or 404(B) evidence.
The trial court accurately instructed the jury, including, inter alia:
You cannot find a defendant guilty solely on circumstantial evidence unless the facts proven by the evidence exclude every reasonable hypothesis of innocence. Evidence that the defendant was involved in the commission of offenses other than the offenses for which he is on trial is to be considered only for a limited purpose. The sole purpose for which such evidence may be considered is whether it tends to show guilty knowledge, absence of mistake, intent, or system. Such evidence may be considered for its bearing on any matter to which it is relevant. Remember the accused is on trial only for the offenses charged. You may not find him guilty of these offenses merely because he may have committed another offense.
(4) La. C.E. art. 404(B)
Our law governing other bad acts evidence is well established.[9]
hfiThis Court, quoting the supreme court’s ruling in State v. Odenbaugh, 10-0268 (La. 12/6/11), 82 So.3d 215, outlined the res gestae rule:
For other crimes to be admissible under this exception, they must bear such a close relationship with the charged crime that the indictment or information as to the charged crime can fairly be said to have given notice of the other crime as well. Thus, evidence of other crimes forms part of the res gestae when said crimes are related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. It is evidence which completes the story of the crime by showing the context of the happenings. Evidence of crimes committed in connection with *1208 the crime charged does not affect the accused’s character because the offenses are committed as parts of a whole. The inquiry to be made is whether the other crime is “part and parcel” of the crime charged, and is not offered for the purpose of showing that the accused is a person of bad character.
The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. In addition, as this Court has observed, integral act (res gestae) evidence in Louisiana incorporates a rule of narrative completeness without which the state’s case would lose its “narrative momentum and cohesiveness, ‘with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.’ ” State v. Cooley, 47,087 (La.App. 2d Cir. 5/16/12), 92 So.3d 1095, 1098, writ denied, 12-1395 (La. 1/11/13), 106 So.3d 546 (emphasis added).
117If the trial court determines that other bad acts evidence is admissible, it must charge the jury at the close of trial that the other bad acts evidence serves a limited purpose and that the defendant cannot be convicted of any crime other than the one charged or any offense responsive to it. State v. Miller, supra.
A trial judge is vested with wide discretion in determining relevance of evidence; his ruling on the admissibility of Art. 404 evidence will not be overturned absent a clear showing of abuse of discretion. State v. Scales, 93-2003 (La. 5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Cooks, 36,613 (La.App. 2d Cir. 12/4/02), 833 So.2d 1034. State v. Greer, supra. The improper admission of other crimes evidence is subject to review for harmless error, and the admission will be deemed harmless if the verdict is “surely unattributable to the error.” State v. Odenbaugh, supra; State v. Parker, 42,311 (La. App. 2d Cir. 8/15/07), 963 So.2d 497, writ denied, 07-2053 (La. 3/7/08), 977 So.2d 896.
The state, in its appellate brief, correctly points out that defendant appears to conflate the trial court’s rulings on:
(1) The defendant’s motion to suppress (based on defense counsel’s failure to receive a copy of the search warrant);
(2) the admissibility of the photo, videos and Officer Bolden’s observations at Old Navy under La. C.E. art. 404(B)/412.2; and,
(3) the admissibility of Officers Bolden and Holloway’s observations of the defendant’s actions near the unnamed woman in the running shorts under the res gestae exception in La. C.E. art. 404(B).
11sThough mentioned in brief, the trial court’s denial of the motion to suppress is not actually what defendant is arguing. Rather, his argument is that the trial court incorrectly admitted the photo, videos and testimonies of Officers Bolden and Holloway under La. C.E. art. 404(B).
(5) Photo, Videos and Officer Bol-den’s Observations at Old Navy
Certainly, IMG 0438 (video of the defendant placing his phone into a bag), IMG 1001 (video of the defendant placing his phone into a bag and waving it under someone’s skirt), and IMG 1003 (video showing, ostensibly, the same person as in IMG 1001 walking out the door), are admissible under La. C.E. art. 404(B) to show intent, motive or absence of mistake.
*1209 In State v. Hamilton, 15-1810 (La. 1/18/16), 209 So.3d 750, the court found a prior charge of aggravated assault with a handgun was admissible as “other crimes” evidence where defendant was on trial for aggravated assault with a firearm, a firearm was not recovered at the scene, and the defendant’s strategy was geared toward showing that the state could not carry its burden of proving that defendant had a firearm when he broke into the victims’ apartment. The videos of Breed-love recording himself placing his phone into a bag and subsequently waving it under the skirt of an unknown female are demonstrative of absence of mistake or motive in this case, as they suggest his previous attempts to use his phone for the purpose of observing, viewing, photographing, filming or recording under women’s skirts.
Similarly, Officer Bolden’s testimony about his observations of the defendant at Old Navy is also likely admissible to show a pattern, motive, or absence of mistake. This testimony is, frankly, creepily similar to his accounts of Breedlove’s actions at B & N. The girls in Old Navy and T.Y. and K.W. were approximately the same age and dressed the same. 1 ^Furthermore, the act of placing a recording device in a briefcase and waving it under the skirts of the girls at Old Navy is sufficiently similar to the act of surreptitiously cupping his phone in his hand-camera side up-and waving it under the skirts of K.W. and T.Y. The trial court did not abuse its discretion by finding these videos to be more probative than prejudicial.
IMG 1010 (the video of the people in line at the coffee shop) and IMG 1021 (the blurry photograph of bookshelves) are, admittedly, more problematic.[10] In any event, the trial court’s potential error in admitting IMG 1010 and IMG 1021 was clearly harmless. The proper admission of the other videos under La. C.E. 404(B), together with the trial testimony, were sufficient proof of the charged crime and the possibly improper admission of IMG 1010 and IMG 1021 were immaterial to the outcome of the jury trial. This assignment of error lacks merit.[11]
(6) The Unnamed Woman in the Running Shorts
Evidence of Breedlove’s actions around the unnamed woman in the running shorts was presented in the context of Officer Bolden’s conversation with Officer Holloway upon his arrival at B & N and the events immediately leading up to the arrest. Even though the state could have included these statements on its La. C. E. art. 404(B)/412.2 notice, these statements were Represented in the context of the witnesses’ observations immediately after the commission of the crime and leading up to the defendant’s arrest. This evidence was necessary to allow the jury to draw the inference necessary to reach an honest *1210 verdict. To have disallowed the testimony about the unidentified young woman in the shorts would have deprived the state’s case of its “narrative momentum and cohesiveness.” See State v. Greer, supra. The trial court did not abuse its discretion by finding the testimonies of Officers Bolden and Holloway as to the unnamed girl in the running shorts to be more probative than prejudicial.
C. Sentencing
(1) In General
The defendant contends his sentence, particularly Count Two, is excessive. According to the PSI ordered by the trial court, Breedlove has no prior criminal record, except for a 2012 traffic violation for failure to maintain control/careless operation of a vehicle, which was subsequently dismissed. Also according to the PSI, he resides in Tyler, Texas, with his wife, and two young children. He has a reputable employment history and a degree in speech language pathology from the Louisiana State University Shreveport. The defendant admitted to marijuana usage in his 20s but denied any substance abuse issues or psychological disorders.
(2) Letters
As mentioned previously, the defendant filed a sentencing memorandum requesting leniency. In the memorandum, he explained that he is the sole breadwinner for his family. He also noted that his son has a sensory perception disorder that limits his communication skills. The defendant claimed that he is one of the few people who can successfully |¾1 communicate with his son. The defendant also argued that his actions were a deviation from his normal behavior. Finally he requested a lenient sentence to allow him to continue being involved in his children’s lives, including at school and in extracurricular activities.
One of the letters was from Dr. Richard D. Meece, a substance abuse and domestic violence specialist. Dr. Meece wrote that the defendant went to his office on April 26, 2012, was assigned to attend “Sex offender Classes on Tuesdays” and, as of September 11, 2012, had completed 20 classes and was “in good standing.”
(3)Impact Hearing
On January 14, 2016, the trial court heard impact statements from both parties. First, Brandy Santoro, the mother of K.W., stated after the incident, KW. did not want to go anywhere or do anything and was always looking over her shoulder. Santoro also said that K.W. missed out on “a lot” because of the “delay of the process for four years.” When asked what she perceived to be an appropriate sentence, Santoro made a comment about chemical castration and stated that she wanted the defendant to be in jail for “enough time to feel remorse.”
The defendant’s wife told the court that her husband was a wonderful father to their two children. She also addressed their son’s sensory perception disorder. She said that he is the sole financial provider for their family and that her family is broken apart without him. She also testified that she has no fear of her husband being around their children or any fear of any potential for recurring behavior similar to that which occurred on March 19, 2012.
|⅞2(4) Analysis of the Sentence
The defendant was sentenced/ordered to:
• serve three years at hard labor without the benefit of parole, probation or suspension of sentence and a $1,000.00 fine as to Count One;
• serve two years at hard labor as to Count Two;
*1211 • concurrent sentences;
• stay away from the location of the offenses;
• have no contact with T.Y. or K.W.;
• register as a sex offender; though
• be permitted around his own children.
The trial court justified its sentence by noting its consideration of the arguments of counsel; the letters and documentations received; the sentencing guidelines of La. C. Cr. P. art. 894.1; the seriousness and gravity of the two offenses and the impact upon and ages of the victims; the mental health issues of the defendant, the PSI report and the totality of these circumstances.
On appeal, the defendant argues that the trial court failed to consider the absence of nearly all the aggravating factors enumerated in La. C. Cr. P. art. 894.1, and failed to adequately consider mitigating factors of this case. The defendant argues that the sentence is a “gross overstatement of the seriousness of the offense,” noting that: (1) there was no physical contact; (2) there were no photos or videos of T.Y. or K.W; (3) there was only a brief, conclusory statement by the court that it had adequately considered the sentencing guidelines; and (4) the court misstated that the defendant had a mental health issue.
| gjThe state emphasizes to the court these three facts: (1) multiple victims; (2) persistent involvement in similar offenses; and (3) the ages of the victims.
Our law on appellate review of sentences is well settled.
A trial judge has broad discretion when imposing a sentence within the statutory limits, and the reviewing court may not overturn a sentence absent manifest abuse of discretion. State v. Smith, 01-2574 (La. 1/14/03), 839 So.2d 1.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. State v. Shelton, 545 So.2d 1285 (La. App. 2d Cir. 1989), writ denied, 552 So.2d 377 (La. 1989). La. C. Cr. P. art. 894.1(C) states that “the court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.” The failure to articulate reasons for sentence pursuant to Article 894.1 does not require a remand when the sentence imposed is not “apparently severe” and there is an adequate factual basis for the sentence contained in the record. State v. Parker, 42,311 (La.App. 2d Cir. 8/15/07), 963 So.2d 497, 510, writ denied, 07-2053 (La. 3/7/08), 977 So.2d 896, A review of the sentencing guidelines under La. C. Cr. P. art. 894.1 does not require the trial court to list every mitigating or aggravating circumstance. State v. Cunningham, 46,664 (La.App. 2d Cir. 11/2/11), 77 So.3d 477. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Foster, 50,535 (La.App. 2d Cir. 4/13/16), 194 So.3d 674, 678. Where the record clearly shows an adequate factual basis for the | ¡.¿sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Love, supra 185 So.3d at 141.
The defendant’s personal history (age, family ties, marital status, health, employment record), criminal record, the seriousness of the offense, and the likelihood of rehabilitation are important elements that may be considered by the trial court during sentencing; however, the trial court is not required to give more weight to any element over another. State v. Modique, 50,413 (La.App. 2d Cir. *1212 1/27/16), 186 So.3d 283; State v. Ates, 43,-327 (La.App. 2d Cir. 8/13/08), 989 So.2d 259, writ denied, 08-2341 (La. 5/15/09), 8 So.3d 581.
The second prong of the analysis addresses constitutional excessiveness. A sentence violates La. Const. Art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 92-3120 (La. 9/10/93), 623 So.2d 1276; State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no measurable contribution to acceptable penal objectives. State v. Guzman, 99-1753 (La. 5/16/00), 769 So.2d 1158. State v. Love, supra at 141.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Jacobs, 41,663 (La.App. 2d Cir. 12/13/06), 945 So.2d 897. This Court in State v. Mayweather, 556 So.2d 200 (La. App. 2d Cir. 1990), explained: “[T]he statutory maximum is available to a sentencing | kludge in appropriate circumstances, whether defendant is sentenced on a reduced charge or the original charge.” Id. at 201 (quoting State v. Mayfield, 493 So.2d 652, 653-54 (La. App. 2d Cir. 1986)).
Recently, this Court in State v. Johnston, 50,706 (La.App. 2d Cir. 6/22/16), 198 So.3d 151, 158, explained Louisiana’s procedure for considering prior cases in determining whether a sentence is excessive:
The Louisiana jurisprudence follows the requirement of comparing the same offenses, not merely the same charges. State v. Foley, 456 So.2d 979 (La. 1984); State v. Dunn, 30,767 (La.App. 2d Cir. 6/24/98), 715 So.2d 641. However, in determining whether a defendant’s sentence is excessive, a reviewing court should compare the defendant’s punishment with the sentences imposed for similar crimes by the same court or other courts. State v. Telsee, 425 So.2d 1251 (La. 1983); State v. Ferguson, 44,-009 (La.App. 2d Cir. 2/25/09), 4 So.3d 315.
Noting that one of these concurrent sentences appears to be quite lenient and the other sentence is for the maximum exposure, we have turned to the limited recent Louisiana jurisprudence to aid in our analysis.[12]
For his conviction on Count One (T.Y., a victim under 17), the defendant faced a potential sentencing exposure of from two to 10 years at hard labor without the benefit of parole, probation or suspension of sentence and a fine of not more than $10,000.00. La. R.S. 14:283(B)(4).
For his conviction on Count Two (K.W), the defendant faced a sentencing exposure of up to two years with or without hard labor and/or a fine of not more than $2,000.00. La. R.S. 14:283(B)(1).
|g,i(5) As to Count One (involving T.Y.)
The defendant’s sentence of three years at hard labor without benefits and a $1,000 fine is on the low end of the permissible sentencing range.
The trial court adequately considered La. C. Cr. P. art. 894.1. The record also provides an adequate factual basis for the sentence. Even though this was a first offense, it was not the first time Breedlove *1213 engaged in this depraved conduct. He was charged with the commission of video voyeurism only as to K.W. and T.Y., but there was evidence of other victims. State v. Schaller, supra; State v. Wright, supra; State v. Boudreaux, supra. “Although there is no physical contact, video voyeurism is nonetheless a violation of the same personal nature. Ultimately this offense is a betrayal of our societal trust and must be dealt with accordingly.” State v. Wright, supra at 437. The trial court reasonably weighed all aggravating and mitigating factors here.[13]
(6) As to Count Two (involving K.W., a victim over 17)
The defendant’s sentence of two years at hard labor is the maximum sentence that can be imposed under La. R.S. 14:283(B)(1). Where there was an adequate factual basis for the low-end sentence for Count One, this record lacks the same adequacy to support a maximum sentence on Count Two.[14]
In State v. Jones, 15-1723 (La. 12/4/15), 184 So.3d 668, the defendant was convicted of misdemeanor contribution to the delinquency of minors, and sentenced to serve the maximum sentence of six months at hard labor. The supreme court reversed the sentence, explaining:
] 27While the trial court did provide reasons why it found defendant guilty of this crime, it provided no reasons for imposing on defendant the maximum sentence of six months in jail. We find the trial court’s decision not to articulate its reasons for the maximum sentence to be inconsistent with the very clear directives set forth in La. C. Cr. P. art. 894.1.
As in Jones, this record provides a factual basis for conviction and compliance ■with La. C. Or. P. art. 894.1. There is no justification, however, for a maximum sentence on Count Two. We are constrained to vacate defendant’s sentence on that count and remand for resentencing.
DECREE
We affirm both convictions.
We affirm the sentence on Count One and vacate the sentence on Count Two, and remand for resentencing.
AFFIRMED IN PART; VACATED IN PART, AND REMANDED FOR RE-SENTENCING.

.(1) IMG 0438 (=12 second video); 4/19/2011 at 21:33 GMT—showing him placing his phone in the record mode and putting it into a container, inside a bookstore.
(2) IMG 1001 (=1 minute, 42 second video); 3/5/2012 at 22:33 GMT—showing the defendant turning on his recording device, placing it inside a container, walking into a bookstore, then placing the container under the skirt of a female.
(3) IMG 1003 («39 second video); 3/5/2012 at 22:54 GMT—showing the victim of the video, exiting the bookstore.
(4) IMG 1010 («46 second video); 3/7/2012 at 22:13 GMT—showing someone standing in line, focusing focused on a young woman in a white shirt and dark skirt.
(5) IMG 1021 (photograph); 3/12/2012 at 21:59 GMT—showing what appears to be a B & N bookshelf.

. After authentication, the defense played K.W.'s recorded statement that she made to the police on April 3, 2012, providing essentially the same information as her trial testimony, except that in her recorded statement, she estimated that the defendant stood between the two girls for only three or four seconds.

. Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), appellate courts review the record in the light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, *1201 does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford, 05-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/6/09), 21 So.3d 297.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La. App. 2d Cir. 1992), writ denied, 617 So.2d 905 (La. 1993); State v. Bonnett, 524 So.2d 932 (La. App. 2d Cir. 1988), writ denied, 532 So.2d 148 (La. 1988). The trier of fact hears the testimony firsthand and unless the factfinder's assessment of believability is without any rational basis it should not be disturbed by a reviewing court. State v. Mussall, 523 So.2d 1305 (La. 1988); State v. Combs, 600 So.2d 751 (La. App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La. 1992). A reviewing court accords great deference to a factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2d Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913; State v. Price, 48,986 (La.App. 2d Cir. 5/15/14), 140 So.3d 1212, writ denied, 14-1274 (La. 2/6/15), 158 So.3d 814. State v. Love, 50,238 (La.App. 2d Cir. 1/13/16), 185 So.3d 136, 139.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir. 9/18/02), 828 So.2d 622, writs denied, 02-2595 (La. 3/28/03), 840 So.2d 566, 02-2997 (La. 6/27/03), 847 So. 2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bell, 50,092 (La.App. 2d Cir. 9/30/15), 179 So.3d 683, 690.
“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572 (La. App. 5th Cir. 12/12/01), 806 So.2d 718, 722. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Jones, 00-980 (La. App. 5th Cir. 10/18/00), 772 So.2d 788, 791. An appellate court reviewing the sufficiency of evidence in cases involving circumstantial evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Bell, supra.

. When the language of a criminal statute is susceptible to more than one meaning, the statute "should be so interpreted as to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and an interpretation should be avoided which would operate to defeat the purpose and object of the statute.” State v. Williams, 03-3514 (La. 12/13/04), 893 So.2d 7, 21. "The starting *1203 point in the interpretation of any statute is the language of the statute itself.” State v. Fussell, 06-2595 (La. 1/16/08), 974 So.2d 1223, 1231 (citing State v. Johnson, 03-2993 (La. 10/19/04), 884 So.2d 568, 575). Under La. R.S. 14:3, a statute should be construed according to the fair import of its words, taken in their usual sense, in connection with the context. Further, “it is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect.” State v. Fussell, supra, citing State ex rel. A.M., 98-2752 (La. 7/2/99), 739 So.2d 188, 190. In the realm of criminal statutory interpretation particularly, "provisions are to be given a genuine construction, according to the fair import of [their] words.” State v. Fussell, supra, citing State v. Kennedy, 00-1554 (La. 4/3/01), 803 So.2d 916, 928.

. State v. Perry, 12-298 (La.App. 3 Cir. 11/7/12), 101 So.3d 575, writ denied, 12-2657 (La. 5/24/13), 116 So.3d 659; State v. Schaller, supra; State v. Wright, supra; State v. Boudreaux, 41,660 (La.App. 2d Cir. 12/13/06), 945 So.2d 898, writ denied, 07-0058 (La. 11/2/07), 966 So.2d 591 ("Boudreaux I"); and State v. Boudreaux, 44,502 (La.App. 2d Cir. 9/23/09), 21 So.3d 1022 ("Boudreaux II”).

. See e.g. 18 U.S.C. § 1801; Cal. Penal Code § 647(j)(2) (2015); Conn. Gen. Stat. § 53a-189a (2015); 720 Ill. Comp. Stat. Ann. 5/26-4 (2012); Kan. Stat. Ann. § 21-6101 (2016); N.Y. Penal Law § 250.45(4) (2014); Tex. Penal Code Ann. § 21.15(b)(1) (2015).

. See Bolles v. State, 13-14-00649-CR, 512 S.W.3d 456, 465-66, 2016 WL 3548797, at *7 (Tex. App. June 23, 2016), petition granted (Oct. 5, 2016). ("We agree in theory that a rational factfinder could conclude that an 'upskirt' photo of a child was lewd because of the invasion of privacy inherent in taking the image without the consent of the subject.”); State v. Glas, 106 Wash.App. 895, 904, 27 P.3d 216, 220 (2001), rev’d on other grounds, 147 Wash.2d 410, 54 P.3d 147 (2002). ("The statute requires only that the purpose of the behavior be to arouse or gratify in some manner some sexual desire of any person. RCW 9A.44.11 5(2). That commonsense reference followed from the evidence here.”).

. At this point, the defendant had apparently not received the affidavit and warrant for the search. At the hearing, the state recalled Det. Allday to authenticate the affidavit and search warrant signed on June 1, 2012, The documents were admitted into evidence. The warrant authorized a search of the defendant’s cell phone for “evidence of video voyeurism.”

. Generally, evidence of other acts of misconduct is inadmissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person.” La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant” from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La. 1973).
Evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La.App. 2d Cir. 4/19/06), 929 So.2d 789. The prosecution in a criminal case shall provide reasonable notice in advance of trial for such purposes. La. C.E. art. 404(B); State v. Greer, 43,177 (La.App. 2d Cir. 4/9/08), 981 So.2d 133, 136, writ denied, 08-1088 (La. 12/19/08), 996 So.2d 1132.
For evidence of other bad acts to be admissible, the state (1) must prove by clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant, (2) must demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(l), and (3) must show that the probative value of the evidence outweighs its prejudicial effect. State v. Greer, supra (citing State v. Jackson, supra).
In addition to these general rules, there are also more nuanced requirements depending on the "independent and relevant reason” for introduction. When the state seeks to introduce other crimes evidence as proof of intent, it must demonstrate: (1) the acts must be similar; and, (2) there must be a real genuine contested issue of intent at trial. State v. Harge, 98-1321 (La. App. 4th Cir. 2/17/99), 730 So.2d 983, 989, writ denied, 99-0785 (La. 9/3/99), 747 So.2d 534 (citing State v. Romero, 574 So.2d 330 (La. 1990)). In addition, where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes, wrongs or acts to show the intent with which the act charged was committed. State v. Thompson, 49,483 (La.App. 2d Cir. 3/18/15), 163 So.3d 139; State v. Schaller, supra at 1061.

. As to IMG 1010, the state failed to prove a clear link between the video of the people in line and the other videos; it is unclear as to whether this video and photo are relevant under La. C. E. art. 402, or admissible under La. C. E. 404(B). As to IMG 1021, the state entered the picture to apparently show that the defendant did "use” his phone to take a picture on March 19, 2012. While IMG 1021 does not show any person, it is possible that the video is indicative of him attempting to use his phone to surreptitiously film someone for a lewd and lascivious purpose.

. While Breedlove strenuously argues that the other crimes acts are inadmissible under La. C.E. 412.2 because the state failed to prove that the alleged victims were minors or that the evidence showed a lustful disposition toward children, the other crimes evidence is still admissible under La. C.E. 404(B), rendering unnecessary the consideration of La. C.E. art. 412.2.

. State v. Johnston, supra; State v. Perry, supra; State v. Schaller, supra; State v. Wright, supra; State v. Boudreaux, ("Boudreaux I”), supra; and State v. Boudreaux, (“Boudreaux II”), supra.

. We surmise that the mental health” issues referenced by the trial likely related to comments in the character letters submitted by the defendant himself.

. It is noted that the defendant s sentence on Count Two involved no fine, when his exposure was a fine of up to $2,000.